**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:19-CR-331** |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **KYHEIM WASHINGTON-GREGG** | : | |

## MEMORANDUM AND ORDER

### I.    Introduction

This case comes before us for consideration of two motions, a motion for temporary release of the defendant filed pursuant to 18 U.S.C. § 3142(i) and a motion for reconsideration of release pursuant to 18 U.S.C. § 3142. These motions compel us to reflect on the tragic criminal life trajectory chosen by the defendant, a 19-year old youth. Over several months during the past year, Washington-Gregg is alleged to have indulged in a crime spree involving a dangerous combination of drugs and firearms. The defendant, who is being held pending trial on federal drug trafficking and firearms charges, both invites us to reexamine our initial detention decision in this case and seeks temporary release from custody pursuant to 18 U.S.C. § 3142 (i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

1

18 U.S.C. § 3142 (i).

In the instant case, Washington-Gregg argues that his release is justified through a reexamination of traditional bail factors. Washington-Gregg also contends that there is a "compelling reason" which justifies the defendant's temporary release from pre-trial detention; namely, the COVID-19 pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. Further, Washington-Gregg suggests that the conditions of his confinement at the Dauphin County Prison, standing alone, may warrant his release from custody. These motions are fully briefed by the parties, and we have afforded all parties the opportunity to make evidentiary presentations in support of their respective positions regarding temporary release for the defendant. Therefore, this motion is ripe for resolution.

In addressing these motions we acknowledge several truths. First, in our view this is a close and difficult case when considered through the prism of a traditional detention analysis. In addition, when considered through the lens of the temporary release provisions of § 3142(i), the gravity of the defendant's COVID-19 medical concerns are shared by all Americans as this nation faces a pandemic without precedent in the past century of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important

societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below it is ordered that the motion for temporary release is DENIED, without prejudice to further consideration of another, more appropriate third-party custodian and accompanying bail conditions.

## II.   <u>**Factual Background and Procedural History**</u>

On November 13, 2019, the defendant was charged in a four-count indictment with distribution of heroin and cocaine base, possession of firearms during drug trafficking, and possession of firearms by a prohibited person in violation of 21 U.S.C. § 841 and 18 U.S.C. §§ 924 (c) and 922(g). These charges arose out of a series of what were alleged to have been criminal episodes spanning between April and July 2019. Initial proceedings and a detention hearing were then conducted in this case on February 19, 2020. At that time, the United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant pending trial.

At the time of these initial proceedings, the probation office prepared a comprehensive pre-trial services report, which provided the following information concerning the defendant's social and medical history, prior history of substance abuse, and criminal record: Washington-Gregg was a 19-year old habitual marijuana user who reported daily drug use. Washington-Gregg's criminal history revealed a

disturbing spiraling pattern of crime spanning some four months in 2019 marked by a potentially lethal combination of drug and firearms offenses, several of which were allegedly committed by the defendant while he was on bail from prior offenses. This troubling course of conduct began in April of 2019, when the defendant was charged with state drug and firearms offenses which were later incorporated into this federal indictment. Washington-Gregg was released following this arrest, but one month later on May 13, 2019, was charged with additional state drug offenses. Once again the defendant was released on bond, but within two months he became entangled with law enforcement when he was charged on July 25, 2019 with possession of a firearm, drugs, and drug paraphernalia. Thus, in the span of three months, Washington-Gregg was charged on three separate occasions with serious drug and firearms offenses involving possession of heroin, cocaine base, marijuana, and two separate firearms. Further, two of these charges involved conduct which occurred after the defendant was initially released on bail.

This sudden crime spree was particularly puzzling and disturbing since prior to April 2019 there were no criminal charges or juvenile adjudications relating to the defendant. Thus, we were presented by an enigmatic but troubling scenario: a young man who, without any prior law enforcement encounters, suddenly found himself charged in a very short span of time with a series of extremely grave offenses.

This sudden, inexplicable, and cascading pattern of criminal activity was paralleled by a series of state bail violations involving new criminal charges, multiple positive drug tests, and persistent drug use by the defendant. As a result, in October of 2019, the defendant was placed on restrictive bail conditions, which included a curfew and drug screening. The results of this state bail supervision further heightened the riddle of Washington-Gregg's behavior since it seems that the lessons that were drawn from this bail supervision were profoundly equivocal. While the defendant appeared to have successfully complied with these bail conditions for nearly six months, the evidence reveals an expedient aspect to this compliance. From October 2019 through February 2020 it is reported that Washington-Gregg complied with his bail supervision. Yet, at the time of his arrest on February 19, 2020, Washington-Gregg had just been released from county bail supervision. By his own admission, upon his release, Washington-Gregg promptly reverted to active drug use, and used marijuana within 12 hours of his federal arrest. Thus shortly after the state officials ceased their close supervision of the defendant, he reverted to drug use.

Given this history of criminal conduct and bail violations, the pretrial services report issued in this case found that Washington-Gregg presented both a risk of flight and a danger to the community. Accordingly, that report recommended that Washington-Gregg be detained pending trial.

At his initial bail hearing, Washington-Gregg considered calling his mother, Karen Gregg, as a third-party custodian, but instead opted to rely upon his grandmother as a potential third-party custodian. The personal circumstances of this particular proffered third-party custodian—an elderly women who was endeavoring to adopt and care for foster children in her home—ultimately led us to conclude that she would not be an appropriate third-party custodian in this case. Thus, our decision in this case was based, in large part, upon our evaluation of the suitability of the proffered third-party custodian. It was not intended to forever foreclose release on some bail conditions to a more appropriate third-party custodian.

Following this hearing, we ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combinations of conditions which could assure the safety of the community or the defendant's appearance in court as required. On this score, we specifically determined that the following factors supported the pre-trial detention of the defendant: We concluded that the defendant was subject to statutory presumptions in favor of detention based upon the drug and firearms charges pending against him. We also found that the evidence against the defendant was strong, that Washington-Gregg had not been consistently compliant with supervision in the past, that the defendant had a recent history of illicit drug use

and possession, and that Washington-Gregg faced a lengthy term of imprisonment if convicted.

We candidly found this to be a difficult and close decision. The defendant's youth and immaturity, and his periodic compliance with state supervision weighed in his favor. Further, we were acutely aware of the fact that Washington-Gregg's criminal conduct, while extremely grave, spanned only 4 months of this youthful offender's life. Moreover, aside from this disturbing crime spree, Washington-Gregg had no other criminal convictions or juvenile adjudications. Yet, these repeated criminal charges involving drugs and guns, the defendant's persistent drug use, and his failure to consistently comply with bail supervision led us to conclude that detention was appropriate here.

The instant motions both ask us to reconsider this prior detention decision and advance a new medical concern, albeit a concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease. Beyond this generalized concern, the defendant cites scant information which would provide a basis for a finding that he possesses specific and individualized factors which heighten these medical concerns in the instant case.

The Government, in turn, opposes this motion, arguing that the initial detention decision was appropriate and insisting that Washington-Gregg has not carried his burden of proof and persuasion under § 3142(i) to justify temporary release due to the current COVID-19 pandemic.

We held a hearing on these motions on April 23, 2020. Understanding that we had kept open the possibility of release of the defendant to a more fitting third-party custodian, the defendant offered his mother, Karen Gregg, as his proposed third-party custodian. The hearing testimony reveals that Ms. Gregg faces a series of personal, professional, and legal challenges and entanglements. She is employed full-time, and also provides child care to three other children. Moreover, Ms. Gregg has a criminal history herself which is indicative of drug use, having been convicted of drug paraphernalia charges. Further, Ms. Gregg's adjustment to probation supervision has been uneven an she has been cited for non-compliance with her probation. Moreover, in a number of instances, bench warrants have issued for Ms. Gregg for minor offenses, although she testified that she was acting to resolve these warrants. Finally, it was apparent that the defendant was under Ms. Gregg's supervision, living in her home, at the time he engaged in this crime spree. In fact, he was alleged to have been operating Ms. Gregg's car on two separate occasions when he was encountered by police in possession of drugs and firearms, factors

which suggested that Ms. Gregg exercised at best only a minimal restraining influence over her son.

Given the record currently before us, as discussed below, we will deny this motion, finding that the proposed release conditions do not overcome the presumption in favor of detention which exists in this case. We will, however, enter this order without prejudice to further consideration of any carefully tailored release conditions accompanied by an appropriate third-party custodian.

## III. Discussion

### A. Detention and Release Under 18 U.S.C. § 3142

Washington-Gregg's motions are cast both as a motion seeking temporary release under 18 U.S.C. § 3142 (i), and as a request for reconsideration of our initial detention order which was entered pursuant to 18 U.S.C. § 3142(e). Accordingly, these motions are best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq*., Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must

be released, as detention is "the carefully limited exception." <u>Id.</u>; <u>see also</u> <u>United States v. Salerno</u>, 481 U.S. 739, 755 (1987).

In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

<u>United States of America v. Cox</u>, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of these

enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142 (i). Until recently, there was a relative paucity of case law construing for us what would constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standard prescribed by statute—which requires a showing of some "compelling reason" to warrant temporary release from custody—suggests that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering

11

from a terminal illness or serious injuries[,]' " <u>United States of America v. Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting <u>United States v. Hamilton</u>, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is suffering from a terminal illness or serious injuries. <u>See, e.g.</u>, <u>United States v. Scarpa</u>, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); <u>see also</u> <u>United States v. Cordero Caraballo</u>, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a

prisoner seeks release from jail. Addressing this question in another custodial

setting, petitions for compassionate release from custody, the court of appeals stated

in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . .
> prison system, particularly for inmates . . . . But the mere existence of
> COVID-19 in society and the possibility that it may spread to a
> particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir.

Apr. 2, 2020).[1]

Finally, any determination of whether a movant has established compelling

reasons which now warrant temporary release from custody must take into account

the important considerations of public safety and flight which animated the original

decision to detain the offender pending trial. Thus, "in considering the propriety of

temporary release, the court would need to balance the reasons advanced for such

release against the risks that were previously identified and resulted in an order of

detention." United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar.

27, 2020). In practice, therefore, a decision on a motion seeking release under §

---

[1] For his part Washington-Gregg urges us to ignore an individualized consideration of his case, and find that the pandemic, standing alone, justifies his release. Given the clear command of the court of appeals rejecting this notion, we must decline this invitation.

3142(i) entails an informed judgment assessing both individual health concerns and

broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the
> defendant's pretrial detention, (2) the specificity of the defendant's
> stated COVID-19 concerns, (3) the extent to which the proposed release
> plan is tailored to mitigate or exacerbate other COVID-19 risks to the
> defendant, and (4) the likelihood that the defendant's proposed release
> would increase COVID-19 risks to others. The court will not
> necessarily weigh these factors equally, but will consider them as a
> whole to help guide the court's determination as to whether a
> "compelling reason" exists such that temporary release is "necessary."
> § 3142(i)

United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan.

Mar. 25, 2020).

It is against this statutory backdrop that we evaluate the instant requests for

release from custody.[2]

## B. **The Defendant's Motions for Release Will Be Denied Without Prejudice.**

We begin by considering whether Washington-Gregg's case falls within the

safety valve provision of 18 U.S.C. §3142(i). Our analysis of this issue proceeds

from the proposition that "[w]hile the COVID-19 pandemic has given rise to

---

[2] We note that the specific statutory context of § 3142(i), which controls here, and
our prior findings that the defendant's release would present a danger to the
community thoroughly distinguish this case from Thakker v. Doll, 1:20-CV-840, an
immigration detention case relied upon by the defendant in his motion. Simply put,
this case involves an entirely different statutory framework, and the compelling
public safety considerations inspired by our finding that this defendant presented a
danger to the community were completely absent in Thakker.

exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." United States v. Roeder, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case, beyond a genuine, but generalized, concern regarding the risks created by COVID-19, the defendant provides very little to support an individualized finding that there is a compelling medical reason for his release. In contrast, the Government has

outlined at length the efforts being taken by the U.S. Marshals and the prison facilities that house Marshal detainees to ensure the safety and well-being of these prisoners. Thus, Washington-Gregg has failed to make the threshold individualized showing necessary of a medical to secure release under § 3142(i).

Further, to the extent the defendant raises Eighth Amendment concerns relating to his incarceration in a custodial setting during this pandemic, this argument fails as a matter of law for several reasons. At the outset, the defendant's reliance upon the Eighth Amendment is misplaced. As a legal matter it is well-settled that "[p]retrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause." Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987). We note that the defendant is a pretrial detainee, and as such, does not have a claim under the Eighth Amendment regarding the conditions at Dauphin County Prison. See Graham v. Connor, 490 U.S. 386, 392 n. 6 (1989) (holding that "the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction' "); Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). Rather, a pretrial detainee's claims regarding the conditions of his confinement fall within the ambit of the Fifth Amendment's Due Process clause, and the proper inquiry is "whether [the conditions of confinement] amount to punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535 (1979); see also

<u>Davis v. City of Philadelphia</u>, 284 F. Supp. 3d 744, 752 (E.D. Pa. 2018); <u>Umarbaev v. Lowe</u>, 2020 WL 1814157 (M.D. Pa. April 9, 2020) (Kane, J.).

On this score, it is well-settled that pretrial detention under 18 U.S.C. § 3142, on its face, does not violate the Fifth Amendment Due Process Clause. <u>United States v. Salerno</u>, 481 U.S. 739, 742 (1987). Rather, only when the conditions amount to punishment, and the detention is not reasonably related to a legitimate penological goal, are a pretrial detainee's due process rights violated. <u>See</u> <u>Bell</u>, 441 U.S. at 539; <u>Habbard</u>, 399 F.3d at 159-60. Thus, "[a]bsent showing of an expressed intent to punish on the part of the detention facility officials, . . . if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " <u>United States v. Cook</u>, No. 3:16-CR-312 (M.D. Pa. April 22, 2020) (Mehalchick, M.J.) (quoting <u>Bell</u>, 441 U.S. at 538-39). Specifically, in the context of the recent COVID-19 pandemic, several courts have declined to hold that a pretrial detainee's due process rights are violated simply because they are incarcerated and at a higher risk of contracting the virus. <u>See e.g.</u>, <u>Cook</u>, No. 3:16-CR-312 (M.D. Pa. April 22, 2020) (Mehalchick, M.J.); <u>United States v. Frost</u>, 2020 WL 1899561, at *4 (E.D. Mich. April 17, 2020); <u>United States v. Leake</u>, 2020 WL 1905150, at *5 (D.D.C. April 17, 2020); <u>United States v. Stevens</u>, 2020 WL 1888968, at *5 (E.D. Pa. April 16, 2020).

Here, the defendant asserts that the conditions at Dauphin County Prison are inadequate and further expose pretrial detainees to the dangers of contracting COVID-19. While a number of the conditions alleged by the defendant would clearly be uncomfortable and unpleasant, nothing in the defense presentation supports an inference that prison officials are imposing these conditions on the defendant as a punitive measure. Quite the contrary, the Government has provided us with updates from the warden of Dauphin County Prison that outline the precautionary steps taken by prison officials to combat the contraction and spread of COVID-19 in the prison.[3] Indeed, as of the date of this memorandum, there have been no confirmed cases of COVID-19 from Dauphin County Prison. Thus, we find that the defendant has not shown that the conditions of his confinement at Dauphin County Prison have violated his right to Due Process under the Fifth Amendment.

Further, even if we accepted the defendant's invitation to assess this challenge to these prison conditions under the Eighth Amendment, this claim would still fail. Under the Eighth Amendment, a prisoner's rights are violated when prison officials

---

[3] While the Government asserts that it received a memorandum from the Warden at Dauphin County Prison, we note that we have received testimony from several detainees who are currently being held at Dauphin County Prison, testimony that calls into question the enforcement of these additional safety precautions during the current pandemic. On this score, we note for the Government that, moving forward, it should provide additional documentation or evidentiary support regarding the enforcement of these COVID-19 precautions in the prison, perhaps in the form of a declaration describing current safety measures at the prison.

are deliberately indifferent to a serious risk of harm. Farmer v. Brennan, 511 U.S.

825, 834 (1994). In short, when "analyzing deliberate indifference, a court must

determine whether the prison official 'acted or failed to act despite his knowledge of

a substantial risk of harm.' A prisoner plaintiff must prove that the prison official

'knows of and disregards an excessive risk to inmate health or safety.' " Garvey v.

Martinez, 2010 WL 569852, at *6 (M.D. Pa. Feb. 11, 2010) (quoting Farmer, 511

U.S. at 837, 841)). As we have noted:

> "When an Eighth Amendment claim arises in the context of a challenge
> to conditions of confinement, we must determine if prison officials
> acted with 'deliberate indifference' to the inmate's health. Farmer v.
> Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).
> The objective inquiry is whether the inmate was 'denied the minimal
> civilized measure of life's necessities.' Hudson, 503 U.S. at 9, 112 S.Ct.
> 995, 117 L.Ed.2d 156." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir.
> 2000).

Smith v. Donate, No. 4:10-CV-2133, 2012 WL 3537017, at *13 (M.D. Pa. June 15,

2012), report and recommendation adopted, No. 4:10-CV-2133, 2012 WL 3537008

(M.D. Pa. Aug. 15, 2012). Further, it is undeniably clear that "the Constitution does

not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349, 101 S.

Ct. 2392, 2400, 69 L. Ed. 2d 59 (1981). Judged by these exacting standards, the

defendant's Eighth Amendment conditions of confinement claims fail. Here, the

evidence rebuts any claim of deliberate indifference to inmate needs by prison staff.

Quite the contrary, the prison has taken steps sanctioned by the CDC to ensure

inmate safety and to date those efforts have been successful since there have been no cases of coronavirus reported at the Dauphin County Prison.

We also note that this very general and sweeping argument attacking custodial conditions at this facility is in our estimation simply too broad in its reach to constitute the type of specific compelling reason for release contemplated by § 3142(i). Indeed, if we embraced the view espoused here by the defendant, we would be compelled to release *all* detainees housed at this facility simply because of the general conditions of their confinement. Since the defendant has not shown that those conditions of confinement are imposed in a punitive manner or deny detainees the minimal civilized measure of life's necessities, we will decline this invitation.

We must then weigh these health concerns against the substantial public safety considerations which led us to order the defendant's detention in the first instance. Moreover, in this case, the defendant has also filed a separate motion which expressly invites us to reconsider this initial detention decision based upon the proffer of a new proposed third-party custodian, the defendant's mother.

We continue to view this case as a close and difficult one when considered in terms of traditional analysis of the statutory factors prescribed by 18 U.S.C. § 3142. While acknowledging his youth and periodic state bail, the following factors, unique to the defendant, compelled the decision to detain the defendant as a danger to the community: In the span of three months, between April and July 2019, Washington-

Gregg was charged on three separate occasions with serious drug and firearms offenses, two of which occurred after the defendant was initially released on bail. This cascading pattern of criminal activity, in turn, was paralleled by a series of state bail violations involving new criminal charges, multiple positive drug tests, and persistent drug use by the defendant. Moreover, the defendant's compliance with state release conditions was, at best, situational and expedient since, by his own admission, upon his release from state bail supervision, Washington-Gregg promptly reverted to active drug use, using marijuana immediately after his state bail conditions were relaxed and within 12 hours of his federal arrest. Finally, the defendant presently faces drug trafficking and firearms charges which trigger two separate presumptions that he presents a danger to the community. Thus, the public safety concerns which animate any decision under the Bail Reform Act continue to weigh in favor of the defendant's detention pending trial.

While the defendant has proffered his mother as a potential third-party custodian, we find that this proposal does not satisfy the exacting burden of proof which the defendant must meet to overcome the presumptions established by law which favor pretrial detention. On this score, we are constrained to note that court records indicate that this proposed third-party custodian was herself convicted of drug possession, placed on probation, and that a bench warrant issued against this proposed third-party custodian for alleged probation violations. Finally, and most

persuasively, the evidence suggests that the defendant committed these offenses while living with his mother and under her supervision. Therefore, in the past, the defendant's mother has not been able to restrain or deter her son's misconduct. Presentation of this problematic third-party custodian simply does not meet the burden of proof imposed upon a movant like Washington-Gregg to overcome these statutory presumptions in favor of continued detention.

Yet while we conclude that we cannot grant these motions at the present time, we emphasize that our decision is not meant to foreclose further bail consideration in this case. Therefore, we will deny these motions without prejudice to future bail consideration for the defendant.

## IV.    <u>Conclusion</u>

Weighing and balancing these countervailing considerations, we conclude that the defendant's motion for reconsideration of release under 18 U.S.C. § 3142 and the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) will be DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. <u>United States of America v. Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of these motions

at some future date should the defendant's circumstances materially change, and without prejudice to further consideration of any carefully tailored release conditions accompanied by an appropriate third-party custodian.

An appropriate order follows.

So ordered this 24th day of April 2020.


_/s/ Martin C. Carlson_____
Martin C. Carlson
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:19-CR-331** |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **KYHEIM WASHINGTON-GREGG** | : | |

## ORDER

In accordance with the accompanying Memorandum Opinion, the defendant's motion for reconsideration of release under 18 U.S.C. § 3142 and the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) are DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change and without prejudice to further consideration of any carefully tailored release conditions accompanied by an appropriate third-party custodian.

So ordered this 24th day of April 2020.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge